(132 So. 904)

## WALKER v. ALLENDALE LAND CO.

### 6 Div. 761.

Supreme Court of Alabama.

March 12, 1931.

Hugh A. Locke, E. M. Creel, and Earl McBee, all of Birmingham, for appellant.

A. Leo Oberdorfer, of Birmingham, for appellee.

SAYRE, J.

Complainant's (appellee's) bill prays an accounting, for discovery of collections by way

of cash and notes made by defendant as agent for complainant, and for an injunction to restrain defendant from collecting money, notes, and checks, the property of complainant. In his answer defendant prayed for a decree against complainant for services rendered by the former to the latter in negotiating the sale of lots in Midfield, a development adjacent to the city of Birmingham, for commissions on the sale of a part of the Midfield tract to one Morton for a manufacturing site, on the clearing up by purchase for complainant of a leasehold interest which incumbered a part of the tract held by one Jacks, and commissions earned in procuring for complainant a right of way and a dedication and improvement of a continuous public road or street through the Midfield tract and an adjacent tract owned by the Tennessee Coal, Iron & Railroad Company. Defendant had a decree for $614.74, commissions earned in the sale of lots in Midfield, conditioned, however, upon the delivery by defendant to the register for complainant of all notes and certified checks (other than checks drawn on the Bank of Ensley, which had failed) which defendant had received by way of payments on lots sold by him. Other relief was denied to defendant, and he was enjoined against the further prosecution of three several actions at law which he had brought to recover the compensations claimed in his answer. Defendant appeals.

Defendant's claim for one thing, other than that for commissions on the sale of lots, is that he was entitled to the sum of $10,000 for services rendered in procuring the board of revenue of Jefferson county to build the Grasselli-Fairfield road continuously through the Midfield plat and the adjacent property of the Tennessee Company, a matter of great advantage to the Midfield property. And further defendant claimed compensation for negotiating a release of the Jacks lease upon a large part of the Midfield plat which on account of the use made by him of that part of the tract, viz., the operation of a dairy farm, greatly impaired the value of the rest of the tract for residence purposes. And, further, defendant claimed compensation for services rendered in bringing about the sale of 140 acres of the Midfield tract to one Morton for a cement plant. The three stated claims of defendant were denied by the decree under review. There was one other lien of difference between the parties; but of that hereafter.

■ The only question of law in the cause presented by the record arises out of defendant's (appellant's) contention that—to quote from the brief—"where a contract is entered into providing that an agent shall plat and superintend the laying out of a city, and as compensation therefor shall have the exclusive right to a commission on all lots and other property sold within the development, an alleged verbal modification of the contract, by which the agent, at a time when the work preliminary to putting lots on sale had almost been completed, is alleged to have gratuitously and voluntarily waived a commission due him under the terms of the contract by virtue of the sale of a factory site, constitutes an alteration of the contract in its essential features, and a consideration is necessary to support the alleged modification agreement, and there being no consideration, such alleged modification agreement is void and of no binding effect whatsoever upon the agent," citing Moore v. Williamson, 213 Ala. 274, 104 So. 645, 42 A. L. R. 981, and some concurring authorities from other jurisdictions. But the facts do not admit of an application of the stated principle. According to our understanding of the voluminous record, after careful consideration, there was no modification of the contract between the parties calling for a new consideration. The services rendered by defendant for which he now claims compensation, viz., the services heretofore mentioned, the evidence shows were renderd in large part prior to the formal contract into which the parties entered, were performed with a view to that contract, and were performed, so far as concerned defendant, for his own benefit in that they prepared the field in which he expected to earn commissions on the sale of lots which would compensate him for his entire services rendered and to be rendered in preparing the property for sale. His offer of October 14, 1924, which antedated the formal agreement between the parties—that offer for one thing making specific mention of the Grasselli-Fairfield road or street—provided for a commission on the sale of lots, "said commission to cover all my claim for services rendered in superintending all improvements and making sales and collections." And it is to be noted that during 17 or 18 months in which defendant afterwards made sales, getting his commissions by the month, nothing was said to indicate a claim by him for the other compensation now claimed in his cross-bill. It appears in the evidence that defendant was performing the services for which he now claims compensation as much for himself as for complainant, and that they entered into the consideration on which defendant agreed to sell lots for a stipulated compensation, and that the claims now asking for the approval of the court are the result of an afterthought.

As for the sum of $3,937.50, paid by complainant to defendant in February, 1926, the same being 2½ per cent. of the sale price of a part of the Midfield tract to Lindley Morton, and made the basis of a claim for an additional 2½ per cent. on the theory that such payment was on account of the 5 per cent. due for services rendered in bringing about that sale and evidence enough of the fact that 2½ per cent. on that account remained to be paid —as for this claim, if the fact of payment of

$3,937.50 stood alone, it would signify nothing in respect of the contract between the parties for the sale of lots, for this was not a sale of lots. And the evidence goes to show satisfactorily that defendant at the time treated the matter of $3,937.50 as a reward for an extra service, expressed surprise and thanks for it as such, and made no claim for further compensation on that account until complainant had determined to abandon the effort to make further sale of lots through him, as they had a right to do under their contract after the lapse of one year. This view of this feature of the case is supported also by the testimony of the witness Macatee, who as engineer laid out the road or street through the property for complainant and the Tennessee Company, and testified very intelligently and without trace of feeling or prejudice.

Appellant, treating the sale of the Morton tract as made under the contract for the sale of lots—this for the reason only, as it appears to the court, that complainant paid to defendant 2½ per cent. on account of that sale—contends that a balance of 2½ per cent. is due to him on that account. But the evidence in the record is to the effect that complainant, as a part of that transaction, ascertained from defendant that he would claim no commission on that account and fixed the price of the property to the purchaser Morton on that assumption. Defendant, proceeding on the theory that the transaction with Morton involved a modification of the contract between the parties to this cause for the sale of lots, cites Moore v. Williamson, supra, as authority for the proposition that the modification, so far as of disadvantage to him, can only be upheld on proof of a new consideration. But in the case referred to it was said: "Where contract for payment of commission on sale of land was bilateral in nature and executory as to the parties, it could be modified before breach, without existence of other consideration, and in suit thereon defendant should have been permitted to show a subsequent oral modification thereof, to the effect that, if sale fell through, defendants would not owe plaintiff anything."

And in the same opinion it is very correctly said: "Either party may waive any right or benefit he may have by a contract, and if the other party acts upon the faith of the waiver, the question of consideration is out of the case, upon the doctrine of estoppel."

The evidence shows, as the court thinks, that the transaction with Morton was had with the express understanding—had, not of necessity, but out of abundance of caution—that defendant would not be entitled to a commission of 5 per cent. thereon.

■ Defendant, as we understand, claims a commission on certain checks certified by the Bank of Ensley. That bank has failed. The value of these checks does not appear. The court below held, as we understand (paragraph 8 of the decree), that the loss suffered by the failure to promptly deposit these checks with the Birmingham Trust Company, according to contract, was the cause of the loss suffered by the failure of the Bank of Ensley, and that the defendant was not entitled to a credit on that account; but that these checks should be indorsed by complainant to defendant, who is charged with their amount, meaning, of course, that defendant should be entitled to any dividends to be declared by the Bank of Ensley on account of them. We are not sure that we are in full possession of all the facts on which the chancellor based his decree in respect to this item; this being said for the reason that statements in respect thereto appear to have been made to the court at the hearing which do not appear of record. We are unable to say that the court erred in its decree in this respect.

The decree in favor of defendant for $614.74 upon the condition named in paragraph 10 of the decree is affirmed.

The decree in favor of complainant as to other matters of controversy is affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.